## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

RONNIE D. LISTER,                  )
                                   )
               Petitioner,         )
                                   )
        vs.                        )        Case No. CIV-07-732-M
                                   )
JUSTIN JONES,[1]                   )
                                   )
               Respondent.         )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, brings this action pursuant to 28 U.S.C.

§ 2254 seeking a writ of habeas corpus.  The matter has been referred to the undersigned

Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C).

Respondent has filed a response to the petition [Doc. No. 13], and the state court record

which includes the trial transcript ("Tr.").  Although Petitioner was granted an extension of

time in which to file a reply, he has failed to do so, and the matter is at issue.  For the reasons

set forth below, it is recommended that the petition be denied.

Petitioner is challenging his convictions in the District Court of Custer County, State

of Oklahoma, Case No. CF-2004-314, of assault and battery with a dangerous weapon, after

---

[1]At the time the petition was filed Petitioner was incarcerated at James Crabtree Correctional Center in Helena, Oklahoma.  Petitioner thereafter notified the Court that his address had changed to Lawton Correction Facility, a private prison in Lawton, Oklahoma.  The Oklahoma Department of Corrections ("DOC") bears responsibility for the custody and supervision of inmates housed in private prisons.  *See* Okla. Stat. tit. 57, § 561(A).  Therefore, Oklahoma DOC Director Justin Jones, who is the state officer having custody of Petitioner, has been substituted as the proper respondent. *See* Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; 28 U.S.C. § 2243.

former conviction of two or more felonies (Count One), and domestic abuse – assault and battery (Count Three).[2] Response, Ex. 7, Instruction No. 3; Tr., p. 82. Petitioner was sentenced to thirty years of imprisonment and one year in the county jail, respectively, and the sentences were ordered to be served concurrently. In his direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA") Petitioner argued (1) there was insufficient evidence to sustain his conviction for assault and battery with a dangerous weapon; (2) defective jury instructions and a confusing verdict form violated his right to due process; (3) Petitioner's defense was prejudiced by the trial court's failure to renumber the counts for trial after Count Two was dismissed at preliminary hearing, and trial counsel was ineffective in failing to raise the error; (4) trial counsel rendered ineffective assistance by inquiring about Petitioner's 1983 felony conviction during direct examination; and (5) various trial errors coupled with defective representation warrant a reduction in sentence. Response, Ex. 1. In a summary opinion the OCCA rejected Petitioner's claims and affirmed his convictions and sentences. Response, Ex. 3.[3]

---

[2]Petitioner was also charged with kidnapping (Count Two), but at the preliminary hearing the trial court sustained Petitioner's demurrer as to Count Two and this charge was dismissed. *See* Preliminary Hearing Transcript, p. 47.

[3]Petitioner subsequently filed an application for post-conviction relief in the district court which was denied. *See* Response, Ex. 5 (OCCA Order Affirming Denial of Post-Conviction Relief, Case No. PC-2007-333, dated May 9, 2007). Petitioner did not file a timely appeal and sought, but was not granted, permission to file an untimely appeal. *Id.* Petitioner recognizes that he has procedurally defaulted the claims raised on post-conviction and states that such claims are not a part of his habeas petition. Petitioner's Brief, p. 2.

Petitioner raises the same five claims he presented on direct appeal.[4] *See* Petitioner's

Brief [Doc. No. 2], p. 3[5] (listing Propositions I through V).   Respondent contends that

Petitioner is not entitled to habeas relief because the OCCA's adjudication of the claims was

not contrary to, nor an unreasonable application of clearly established federal law or based

on an unreasonable factual determination.

## DISCUSSION

### Standard Governing Habeas Corpus Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this

Court may grant a writ of habeas corpus relief for factual and legal matters that have been

adjudicated in state court only if that adjudication (1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined

by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of evidence presented in the State court proceeding.   28

U.S.C. § 2254(d)(1) and (2).   Under this standard, judicial review is directed to the result of

_____

[4]Petitioner does not set forth his grounds for relief in his petition but merely refers the Court to his supporting brief [Doc. No. 2] for his claims.  *See generally*, Petition [Doc. No. 1].  To the extent Petitioner has failed to recite specific facts or arguments in support of the claims set forth in the supporting brief, the undersigned has broadly construed Petitioner's claims to incorporate the facts and arguments raised on direct appeal. *See* Petitioner's Brief, p. 6 (requesting the Court "to make an in depth review of the claims raised on direct appeal and in the state court of review of these claims the OCCA reached a decision that was contrary to clearly established federal law") (citing 28 U.S.C. § 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *VanWoudenberg v. Gibson*, 211 F.3d 560 (10th Cir. 2000)).

[5]Petitioner's supporting brief has no page numbers; citation to this document has been made by counting the pages.

the state appellate court's decision, not its reasoning. *See Gipson v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result - not its rationale - is 'legally or factually unreasonable'").

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)), *cert. denied*, 129 S.Ct. 1345 (2009). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (quoting *Maynard*, 468 F.3d at 671)). In conducting the AEDPA deferential inquiry, the Court presumes that the state court factual findings are correct, and the burden of rebutting this presumption by clear and convincing evidence is placed on the petitioner. *See* 28 U.S.C. § 2254(e)(1); *Smith v. Mullin*, 379 F.3d 919, 924-25 (10th Cir. 2004). Applying the standards set forth in the AEDPA, the

undersigned concludes that the OCCA's adjudication of Petitioner's claims was not contrary to, nor an unreasonable application of clearly established federal law.

## I.      Ground One - Sufficiency of the Evidence

Petitioner alleges that the evidence was insufficient to sustain his conviction for assault and battery with a dangerous weapon (Count One).  Petitioner's Brief, p. 4.  In support of this claim, he asserts that "[t]he State failed to produce any evidence in corroboration of the offen[s]e other than perjured testimony; which the State had a duty to correct."  *Id.*   The OCCA found that "[t]here was sufficient evidence for [a] rational trier of fact to find that [Petitioner] had poked [the victim] with a knife."  Response, Ex. 3, p. 2 and n.2 (citing *Peninger v. State*, 721 P.2d 1338, 1341 (Okla. Crim. App. 1986)).

Judicial review of Petitioner's habeas challenge to the sufficiency of the evidence presented at trial "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  On federal habeas review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson* at 319.  In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the

evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F. 3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

In this case, the sufficiency of the evidence inquiry is based on Oklahoma law which defines the substantive elements of assault and battery with a dangerous weapon. *Jackson*, 443 U.S. at 309, 324 n. 16. Those elements are (1) an assault and battery, (2) upon another person, (3) with a dangerous weapon, (4) without justifiable or excusable cause, (5) with intent to do bodily harm. Okla. Stat. tit. 21, § 645 (2001); Oklahoma Uniform Jury Instructions-Criminal, 4-12 (2d ed.). In rejecting his claim on direct appeal that the evidence was insufficient to prove these elements, the OCCA applied the *Jackson* standard[6] and concluded that "the evidence was sufficient to support Lister's conviction for Assault and Battery with a Dangerous Weapon." Response, Ex. 3, p. 2. The OCCA specifically found "[t]here was sufficient evidence for [a] rational trier of fact to find that Lister had poked Dickson with a knife." *Id.* at n. 2.

At trial Tonie Dickson testified that on the evening and early morning hours of July 22-23, 2004, Petitioner, her boyfriend who was living with her, hit and kicked her, causing multiple injuries, and poked her with a knife, threatening to kill her with it. Ms. Dickson testified in more detail that on the evening of July 22, after she and Petitioner had consumed

---

[6]The OCCA cited its previous decision in *Peninger*, 721 P.3d at 1341, recognizing the *Jackson* standard as the proper test to be used in a sufficiency of the evidence challenge.

alcohol and used drugs, Petitioner accused her of cheating on him and they argued.  Tr., pp.

101-104.  Ms Dickson testified that at various times throughout the night Petitioner hit her

with his hands, kicked her, and hit her with his belt.  Tr., pp. 105-07.[7]  She further testified

that Petitioner pulled out a green pocketknife with a black picture on it that she had

previously seen him carrying and poked her arm with the knife while threatening to cut her

neck and cut off her ear and nose.  Tr., pp. 110-11, 162-63.[8]  She further testified although

Petitioner did not cut her, she felt the tip of the knife against her skin, that it felt like a

pinprick, and that it hurt.  Tr., pp. 113, 142-43, 163.  Ms. Dickson testified that she was

afraid that Petitioner would act on his threats because he was angry, Tr., p. 112, that she did

not consent to any of Petitioner's actions, and that she was "afraid for [her] life."  Tr., pp.

126-27.  Ms. Dickson testified that Petitioner had been violent with her several times in the

past after which she would leave but would come back.  Tr., pp. 133-35, 159.  On the

morning of July 23, she persuaded Petitioner to let her go to work and she called the police

from her workplace because she was tired of being beaten by Petitioner.  Tr., pp. 137, 169.

Officer Hammans testified that in response to a dispatcher's call on July 23, 2004, he

met with Ms. Dickson, who had a swollen eye and was extremely upset and afraid.  Tr., pp.

166-67.  Officer Hammans transported Ms. Dickson to the police station to take her

---

[7]Ms. Dickson specified that Petitioner hit her arms and shoulders, her head, her legs and buttocks, and "[b]asically just wherever he felt like hitting me."  Tr., pp. 105-06.  Dickson further testified that Petitioner used his belt to hit her once on the left leg, *id.*, p. 106, and kicked her in the buttocks, *id.*, p. 107.

[8]Ms. Dickson testified that Petitioner had lost the knife she described but that he found it in the couch before the incident on July 22.  Tr., pp. 127, 144-45.

statement about the incident, but because she was so upset, the officer wrote down her statement which she then reviewed and signed. Tr., pp. 168-69. Hammans testified that he requested a female police department dispatcher to examine and photograph Ms. Dickson's injuries after which Dickson was taken to the hospital. Tr., p. 170. The dispatcher testified that she took photographs that showed Ms. Dickson's face with bruising around both eyes, bruising on her arms, shoulders and back, and her left leg. Tr., pp. 180-85.

Emergency room physician Dr. Robert Blakeburn testified that he examined Ms. Dickson on the morning after the incident and determined that she had a ruptured right eardrum and multiple recent bruises – around the ear, the top of the head, both buttocks, both thighs, her back and on her left arm. Tr., pp. 188-90. Dr. Blakeburn testified that in relating the history of her injuries, Ms. Dickson stated that "she had been hit by her boyfriend all last night and the night before, that he hit her with a wrench, that he threatened to kill her." Tr., p. 192.

Petitioner testified on his own behalf and admitted that on July 22, 2004, he and Ms. Dickson had been drinking and using drugs, that he hit and kicked Ms. Dickson and that he also hit her with his belt "four or five times." Tr., pp. 226-27. Petitioner also admitted that he had owned a green knife, but that he had lost it prior to July 22. Tr., pp. 228-29. Petitioner admitted that he poked Petitioner with a keychain holding a house key, which he wanted her to believe was a knife. Tr., pp. 221, 228-30.[9] He further admitted telling Ms.

---

[9]Petitioner actually stated, "That's when I pulled out my knife – I mean my chain out and she
(continued...)

Dickson "You need your damn head chopped off."  Tr., p. 218.

Apparently the "perjured testimony" objected to by Petitioner is the testimony of the victim, Ms. Dickson.  Petitioner alleges Ms. Dickson's "credibility as a witness was in jeopardy" based on her failure to mention the green knife during a second investigative interview and on evidence offered by defense witnesses that the green knife had been stolen prior to the alleged stabbing on July 22, 2004.  Tr., p. 143.  The fact that the evidence regarding the knife was conflicting does not render Ms. Dickson's testimony either perjured or insufficient to support Petitioner's conviction.[10]

Petitioner's arguments regarding the insufficiency of the evidence against him amount to a challenge to the credibility and weight to be accorded the evidence presented by the State at trial.  The jury obviously did not believe Petitioner's testimony that he poked Ms. Dickson with a key chain rather than a knife.  As previously discussed, this Court is required to accept the jury's determination regarding the credibility of witnesses and the resolution of conflicting evidence,  as long as such resolution is within the bounds of reason.  *See Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (on federal habeas review of sufficiency of the evidence challenge the Court "may not weigh conflicting evidence or consider the credibility of witnesses").

---

[9](...continued)
thought it was a knife."  Tr., p. 221.

[10]Ms. Dickson's testimony at trial – that Petitioner poked her with a pocket knife while threatening to kill her - was in conformance with her first statement to the police.  Ms. Dickson also testified that the green knife Petitioner owned had been stolen but that he found it before the July 22 incident.  Tr., pp. 144-45.

Viewing the evidence in the light most favorable to the State, the undersigned finds that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that Petitioner committed the offense of assault and battery with a dangerous weapon – a pocketknife.  Therefore, the OCCA's rejection of Petitioner's sufficiency of the evidence claim was neither contrary to nor an unreasonable application of *Jackson v. Virginia*, *supra*. Nor has Petitioner shown that the OCCA's decision was based on an unreasonable determination of the facts in light of the evidence presented at his trial.  It is therefore recommended that habeas relief be denied as to the claim in Ground One.

## II.    Ground Two - Jury Instructions/Counsel's Ineffectiveness

As his second ground for relief Petitioner alleges: "Defective jury instruction and confusing verdict form violated Petitioner's due process of law."  Petitioner's Brief, p. 3. Petitioner offers no further argument or explanation of this claim.   As previously noted, the undersigned has liberally construed Petitioner's arguments to be those raised on direct appeal.  On direct appeal Petitioner admitted that the jury was correctly instructed regarding the charged offense (assault and battery with a dangerous weapon) as well as the lesser included offenses of assault with a dangerous weapon, assault and battery, and assault. Response, Ex. 1, p. 9; *see also* Response, Ex. 7, Instruction No. 26.  Petitioner complained, however, that the trial court failed to instruct the jury regarding the punishment ranges for the lesser included offenses of "assault and battery and simple assault."  Response, Ex. 1, p. 10.  He further alleged that counsel rendered ineffective assistance for failing to request such instruction.  Response, Ex. 1, p. 13.

10

In rejecting Petitioner's claim of inadequate verdict form and jury instructions, the OCCA made the specific factual finding that "Instructions Nos. 29 and 30 informed the jury of the appropriate range of punishment for the lesser-included offenses. Moreover, the verdict form listed all of the offenses and included a blank line for the jury to fill in the sentence." Response, Ex. 3, p. 2, n.3. Under the circumstances of this case, the OCCA's finding that, contrary to Petitioner's claim, the jury was instructed as to the punishment range for the lesser included offenses, constitutes a factual finding. Morever, that finding is presumed correct as Petitioner has presented no evidence, much less clear and convincing evidence, in rebuttal. 28 U.S.C. § 2254(e)(1).[11]  As a result, this Court must accept the OCCA's findings for purposes of habeas review and habeas relief should be denied on this claim.[12]

Likewise, Petitioner's related claim that counsel was ineffective for failing to request instructions providing the punishment ranges for the lesser offenses of assault and battery and assault fails to provide a basis for habeas relief. To establish that counsel was ineffective,

---

[11]The record before this Court confirms the OCCA's finding that, contrary to Petitioner's claim, the instructions specifically addressed the punishment range for the lesser included offenses. See Response, Ex. 7, pp. 105-107.

[12]In any event, Petitioner clearly fails to demonstrate that either the verdict form or the instructions regarding the punishment ranges for the less included offenses were inaccurate or inadequate. As a result he fails to show that the verdict form or jury instructions "so infected the entire trial that the resulting conviction violates due process." *Middleton v. McNeil,* 541 U.S. 433, 437 (2004)(quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991))(internal quotation omitted). Thus, even if the OCCA's finding with respect to this claim was not considered a factual finding for purposes of the § 2254(e)(1) presumption, such finding was neither contrary to nor an unreasonable application of federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

a habeas petitioner must show (1) counsel's performance was constitutionally deficient and (2) counsel's deficient performance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Performance is deficient if counsel's "representation [falls] below an objective standard of reasonableness." *Id.* at 688. Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In reaching its decision regarding Petitioner's ineffective assistance claims, the OCCA identified the correct legal principle from the Supreme Court's decisions,[13] and therefore the state court's decision is reviewed to determine whether the rejection of Petitioner's ineffective assistance of counsel claim involved an "unreasonable application" of federal law. *See Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003).

As previously discussed, the OCCA found that the jury was in fact instructed as to the punishment ranges for the lesser included offenses. Therefore, counsel's performance in this regard cannot be found deficient. Moreover, Petitioner fails to show any prejudice from the alleged instructional error because the jury found Petitioner guilty of assault and battery with a dangerous weapon so that the punishment ranges for the lesser included offenses were irrelevant.

In summary, the undersigned finds that Petitioner has not shown that the OCCA's adjudication of his ineffective assistance of counsel claim was contrary to or an unreasonable

---

[13]The OCCA cited Oklahoma case law that applied the well-established rule set forth in *Strickland, supra*, governing claims of constitutionally ineffective assistance of counsel. *See* Response, Ex. 3, p.2 n.4 (citing *Selsor v. State*, 2 P.3d 344, 354 (Okla. Crim. App. 2001) for principle that ineffective assistance of counsel requires proof of deficient performance and prejudice).

application of clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief based on such claim.

### III.  Ground Three - Failure to Renumber Counts/Counsel's Ineffectiveness

At preliminary hearing the charge of kidnapping (Count Two) against Petitioner was dismissed.  Preliminary Hearing Transcript, p. 47.  Although the relevant verdict form does not appear in the record, the parties have not disputed that the verdict form given to the jury listed the two remaining charges as Counts One and Three.  During jury deliberations the jury sent a note stating "On the top sheet, it should read Count 2 instead of Count 3." Response, Ex. 9.  In response, the judge informed the jury that "the numbers on the counts are correct."  *Id.*  As on direct appeal, Petitioner alleges that the trial court erred in failing to renumber the counts in the amended information after Count Two was dismissed and that counsel was ineffective for failing to request that the counts be renumbered for trial. Petitioner's Brief, p. 3; Response, Ex. 1, p. 16.  Although again Petitioner fails to support this habeas claim with any facts or arguments, on direct appeal he argued that the note from the jury showed that the jury was speculating regarding the existence of a previously charged count and that such speculation likely influenced the recommendation of "such a heavy thirty (30) year sentence" on Count One.  Response, Ex. 1, pp. 16-17.  He further alleged the counsel was ineffective for failing to object to the amended information prior to trial and failing to request that the counts be renumbered.  *Id.*, p. 16.  The OCCA rejected Petitioner's claim of ineffective counsel, holding that Petitioner failed to establish prejudice resulting from counsel's failure to request an amended information with renumbered counts.

Response, Ex. 3, pp. 2-3 n.4.[14]  The OCCA specifically found:

> Assuming [Petitioner's] counsel should have requested an Amended Information with renumbered counts, [Petitioner] fails to adequately establish prejudice.  The note does not indicate that [Petitioner's] sentence resulted from this omission. Moreover, [Petitioner's] sentence was entirely reasonable given the facts of the crime and his prior record.

*Id.*

The undersigned finds Petitioner has failed to show that he is entitled to habeas relief based on his claim in Ground  Three.  First, Petitioner fails to articulate, either in this action or on direct appeal, how the trial court's failure to renumber the two remaining counts on the verdict forms violated his federal constitutional rights.  *See Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir. 2003) (noting that "our inquiry is tightly constrained by the AEDPA's requirement that there be clearly established federal law on point").  Nor, as the OCCA found, has Petitioner shown that he suffered any prejudice as a result of either the court's failure to renumber the counts or counsel's failure to request such renumbering.  Petitioner offers nothing more than speculation in support of his claim that the thirty-year sentence recommendation was the result of the jury's consideration of another possible charge against him.  *See United States v. Nelson*, 54 F.3d 1540, 1547 (10th Cir.1995) ("That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.") (quotation omitted).

---

[14]As previously noted, in reviewing Petitioner's claims of ineffective assistance of counsel, the OCCA cited Oklahoma case law that correctly applied the *Strickland* standard.  Response, Ex. 3, p. 2 n.4.

Moreover, the jury's recommended sentence was consistent with the evidence presented. Under these circumstances, the undersigned finds that Petitioner has failed to show that the trial court's failure to renumber the counts on the verdict forms violated his federal constitutional rights or that counsel's failure to request renumbering was either ineffective or prejudicial.

Thus, the undersigned finds that the OCCA's adjudication of Petitioner's claim in Ground Three was neither contrary to nor an unreasonable application of federal law. Petitioner is therefore not entitled to habeas relief on this claim.

## IV.   Ground Four - Ineffective Assistance of Trial Counsel

In Ground Four Petitioner alleges that "counsel rendered ineffective assistance by asking Petitioner on direct examination about a prior 1983 conviction." Petition's Brief, p. 3. Petitioner fails to articulate in his petition any further facts regarding how counsel's performance was deficient or how such testimony prejudiced him at trial. However, on direct appeal, Petitioner argued that under Oklahoma law, evidence of his 1983 felony conviction for second degree burglary (Case No. CF-1983-141) was not admissible for impeachment or enhancement purposes because it was stale, or over ten years old, and thus, his counsel was ineffective for making such inquiry. Response, Ex. 1, pp. 18-21 (citing Okla. Stat. tit. 12, § 2609(B)[15] and Okla. Stat. tit. 21, § 51.2[16]).

---

[15]At the time of Petitioner's trial, Section 2609(B) provided in relevant part:

Evidence of a conviction more than ten (10) years old, as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written

(continued...)

15

At the preliminary hearing, counsel for the State advised that the State intended to seek enhancement of Petitioner's assault and battery with a dangerous weapon charge under Okla. Stat. tit. 21, § 51.1 with three felony convictions  - a 1983 second degree burglary conviction resulting in a two year sentence in Case No. CF-83-141; a 1989 second degree burglary conviction after former resulting in a ten year sentence in Case No. CF-89-18; and a 1994 conviction on two counts of unlawful delivery after former resulting in two ten year sentences in Case No. CF-93-99.   Preliminary Hearing Transcript, pp. 41-42.   Defense counsel objected to the use of the 1983 conviction for enhancement purposes.   *Id.*, p. 45.   After hearing argument from both counsel, the court determined that two convictions - the drug conviction in Case No. CF-94-99 and the second degree burglary in CF-89-18 were available for enhancement of the charge of assault and battery with a dangerous weapon.   *Id.*, pp. 45-46.   The State objected to the judge's failure to find that the 1983 conviction was eligible for use for enhancement and announced an intention to appeal the issue.   *Id.*, p. 47.

In rejecting this claim of ineffective assistance on direct appeal, the OCCA held that

---

[15](...continued)
notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence or unless, during the ten-year period, the witness has been convicted of a subsequent crime which is a misdemeanor involving moral turpitude or a felony.

Okla. Stat. tit. 12, § 2609(B) (Supp. 2004) (eff. July 1, 2004).

[16]Under Okla. Stat. tit. 21, § 51.2, "[N]o person shall be sentenced as a second or subsequent offender under Section 51.1 of this title . . . when a period of ten (10) years has elapsed since the completion of the sentence imposed on the former conviction; provided, said person has not, in the meantime, been convicted of a misdemeanor involving moral turpitude or felony."

trial counsel's actions in eliciting information regarding the 1983 conviction from Petitioner

on direct examination amounted to reasonable trial strategy and did not result in deficient

performance or prejudice to Petitioner.  Response, Ex. 3, p. 3 n.4.  The OCCA reasoned:

> [Petitioner's] trial strategy was to admit to prior convictions and present guilt
> (except for possession of the knife), with hopes that his honesty would
> enhance his credibility and thus convince the jury that [] he did not possess a
> knife and avoid the Assault and Battery with a Dangerous Weapon charge.
> This was reasonable trial strategy and trial counsel's performance was not
> deficient.

*Id.*

As discussed previously, in order to establish ineffective assistance of counsel,

Petitioner must show that his attorney's performance was constitutionally deficient and

prejudicial.  *See Strickland*, 466 U.S. at 690-91.  Petitioner bears a "heavy burden" to show

deficiency in the representation.  *Cummings v. Sirmons*, 506 F.3d 1211, 1226 (10th Cir.

2007), *cert. denied*, 128 S.Ct.2943 (2008).  To satisfy the first prong of this test, Petitioner

must show that his counsel's representation fell below an objective standard of

reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether Petitioner has made

this showing, the Court "must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance" and should grant relief only if

the challenged conduct cannot, under the circumstances, "'be considered sound trial

strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Prejudice,

under the second prong, is shown by demonstrating that "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Id.* at 694.

"A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill chosen that it permeates the entire trial with obvious unfairness." *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997) (citation omitted). It is a well-recognized trial strategy for defense counsel to bring out prejudicial evidence, such as prior convictions, on direct examination rather than allowing the prosecutor to first expose such evidence to the jury during cross-examination.  This strategy attempts to "draw the sting" or mitigate the prejudicial effect of such evidence and add some credence to the defendant's testimony by showing that he freely admits past wrongs.  *See Jones v. State*, 764 P.2d 914, 916 (Okla. Crim. App. 1988); *Lamb v. State*, 756 P.2d 1236, 1238 (Okla. Crim. App.1988) ("This Court has been unwilling to say that direct examination about prior felony convictions was not a viable trial strategy.").

On direct appeal, Petitioner argued that absent defense counsel's inquiry to Petitioner on direct examination, the jury would not have been apprised of the 1983 conviction. Specifically, Petitioner argued that the 1983 conviction could not have been properly used for enhancement or impeachment under Oklahoma law and thus, no reasonable trial strategy can be ascribed to counsel's actions.

Respondent directs the Court to the argument made by the State at Petitioner's preliminary hearing and on direct appeal – that the evidence of Petitioner's 1983 felony conviction was admissible for enhancement purposes because it had been "revitalized" by his 1989 and 1994 convictions.  Response, pp. 27-28 (citing Okla. Stat. tit. 21, § 51.2).  *See*

*also Ruth v. State*, 966 P.2d 799, 801 (Okla. Crim. App. 1998) ("felony convictions . . . may be used to revitalize prior offenses that occurred prior to a period of ten years since the completion of the sentence imposed"). Respondent also acknowledges that under Oklahoma law, crimes involving dishonesty may be admissible subject to statutory requirements. Response, p. 29 (citing *Cline v. State*, 782 P.2d 399, 341 (Okla. Crim. App. 1989) and *Croney v. State*, 748 P.2d 34, 35 (Okla. Crim. App. 1987)). *See Banks v. State*, 810 P.2d 1286, 1292 (Okla. Crim. App. 1991) (holding second degree burglary constitutes a crime of "dishonesty and false statement" within the meaning of Okla. Stat. tit. 12, § 2609(A)(2)). Moreover, even if such conviction is over ten years old, it may be available for impeachment if certain statutory requirements, including a balancing test conducted by the trial court, are met. *See* Okla. Stat. tit. 12, § 2609(B).

Petitioner's trial counsel could reasonably presume that the prosecutor intended to attempt to inquire as to all three felony convictions on cross-examination of Petitioner. In a "he said, she said" trial like this one, the credibility of both the defendant [Petitioner] and the victim was of prime importance. Under theses circumstances, defense counsel's strategy of eliciting testimony from Petitioner about all three prior felony convictions was a reasonable attempt to convince the jury that Petitioner's testimony was truthful and should be believed. Thus, counsel's performance in this regard was not deficient.

In any event, Petitioner cannot demonstrate that he was prejudiced by the evidence of a third felony offense. Petitioner admitted to two other prior felony convictions, the validity of which he does not challenge, and thus his conviction for assault and battery with

a dangerous weapon was punishable by a term of imprisonment of not less than twenty years under the general enhancement statute, Okla. Stat. tit. 21, § 51.1(B).  Response, Ex. 7, Instruction No. 28.  The jury recommended a sentence of thirty years which is well within the statutory range.  Although Petitioner speculates that the jury improperly considered the 1983 conviction in determining his punishment, he has not established that but for counsel's strategic decision, the result of the proceedings would have been different.  *Strickland*, 466 U.S. at 694.  Accordingly, the undersigned finds that Petitioner has failed to show that the OCCA's rejection of this ineffective assistance of trial counsel claim was contrary to or an unreasonable application of *Strickland v. Washington, supra*.  *See Welch v. Sirmons* 451 F.3d 675, 704-05 (10th Cir. 2006) (holding that OCCA's conclusion that defense counsel's introduction of prior convictions was reasonable strategy, was not contrary to, or unreasonable application of, *Strickland*).  Consequently, Petitioner is not entitled to habeas corpus relief on Ground Four.

## V.    Ground Five - Cumulative Error

In his final ground for relief, Petitioner alleges that "[v]arious trial errors coupled with defective representation warrant a modification of the sentence."  Petitioner's Brief, p. 3.  On direct appeal Petitioner argued in a fifth claim that the errors arising out of his previous four grounds for relief resulted in cumulative error which denied his right to a fair trial and entitled him to reversal of the conviction or modification of his sentence.  Response, Ex. 1, pp. 22-23.  In its summary opinion the OCCA neither acknowledged nor addressed Petitioner's fifth claim alleging cumulative error.  Response, Ex. 3.  The applicable standard

depends on whether the OCCA has addressed the merits of the claim. 28 U.S.C. § 2254(d). Because it appears this claim was not addressed on the merits, the § 2254(d)(1) deference requirement does not apply, and this Court exercises its independent judgment on Petitioner's cumulative error claim.[17]  *See, e.g., Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

Petitioner's claims raised in Grounds One through Four have been reviewed and no error has been found meriting federal habeas relief. In reviewing a claim of cumulative error, the court may only consider actual errors for purposes of determining whether a due process violation has occurred. *See Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) ("[A] cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.") (citation omitted). *See also Workman v. Mullin*, 342 F.3d 1100, 1116-17 (10th Cir. 2003) ("Workman's sentence cannot be unconstitutional due to cumulative error because we have not found that the district court committed error."). Therefore, the undersigned finds that Petitioner's cumulative error claim is without merit and

---

[17]Respondent contends that Petitioner's fifth ground for relief "relates mainly to sentencing," which is a matter of state law ordinarily not cognizable on federal habeas review. Response, p. 33-34. To the extent Petitioner alleges in Ground Five that he received an excessive sentence, the undersigned agrees. On habeas review, federal courts "afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (citations omitted). Petitioner's recidivism resulted in the enhancement of his sentence, creating the possibility of life imprisonment for a conviction of assault and battery with a dangerous weapon after former conviction of two or more felonies. *See* Okla. Stat. tit. 21 § 51.1(B); *see also* Response, Ex. 7 (Instruction No. 27). The thirty year sentence Petitioner received for his conviction is well within the statutory limits and is authorized by Oklahoma law. Therefore, to the extent Petitioner claims that his sentence is excessive, such claim is without merit.

recommends that Ground Five be denied.

## RECOMMENDATION

Based upon the foregoing analysis, it is recommended that the petition for a writ of habeas corpus be denied.  Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 9th day of July, 2009, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 19th day of June, 2009.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE